**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| EDDY-BELL COMMERCIAL PROPERTIES, LLC | ) | Case No. 08-21278 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| LINDEN CONDOMINIUM ASSOCIATION, INC. | ) | |
| | ) | Contested Matter |
| Movant, | ) | Under Rule 9014 |
| | ) | |
| v. | ) | |
| | ) | |
| EDDY-BELL COMMERCIAL PROPERTIES, LLC | ) | |
| | ) | |
| Debtor and | ) | |
| Respondent | ) | |

**MOTION FOR RELIEF FROM STAY OR,**
**IN THE ALTERNATIVE, ADEQUATE PROTECTION**

Linden Condominium Association, Inc. ("Linden"), by and through its undersigned counsel, respectfully moves this Court for an Order granting it relief from stay to prosecute its Superior Court foreclosure action against the Debtor. In support of this Motion, Linden respectfully represents and requests as follows:

**SUMMARY**

1.  The Debtor filed its voluntary Petition under Chapter 11 of the United States Bank Code on July 3, 2008 (the "Petition Date"). No Creditors' Committee has been formed.

2.  Linden is the unit owners' association for the common interest community known as The Linden (the "Common Interest Community"), created by a declaration (the "Declaration")

1

by New Linden Limited Partnership, dated December 31, 1980 and recorded on December 31, 1980 in Volume 1836 at Page 29 of the Hartford Land Records.  The Common Interest Community consists of twelve (12) commercial units (the "Commercial Units") and 59 residential units located in the five-story brick building at the corner of Main Street and Capitol Avenue, Hartford, Connecticut, directly across the street from the U.S. Court House.

3. The Debtor owns all of the Commercial Units and is responsible for the payment of approximately 25% of the operating budget for the Common Interest Community.  While most of the Debtor's Commercial Units are vacant, several are occupied by a Debtor-related entity known as Emperor, LLC, which operates a restaurant under common ownership and control with the Debtor.  The restaurant pays no rent, utilities or other charges to the Debtor. Linden believes that the Debtor's owners are using the restaurant as a part of an improper scheme to conceal revenue and assets from Linden and its other creditors.

4. The Debtor ceased to make regular payments of common charges and assessment in February of 2007.  Pursuant to an order of the Connecticut Superior Court, the Debtor did make some payments during the months of October 2007 through June 2008.   The total amount of delinquent charges currently unpaid is $114,082.11 as of August, 2008.

5. As more fully described below, the Debtor has no equity in the property and no business to reorganize.  The Debtor's failure to pay common charges has caused undue hardship to the remaining unit owners.  Continuance of the automatic stay of 11 U.S.C. Section 362 would cause further undue hardship to the remaining unit owners, with no countervailing benefit to the Debtor or the Debtor's estate.

## THE DEBTOR'S CHAPTER 11 CASE

6. The Debtor's filings in this Chapter 11 case are fatally inadequate and evidence the Debtor's inability or unwillingness to comply with the requirements of the Bankruptcy Code.

7. There is no information of record in this case from which the Debtor's assets, liabilities and the nature of the Debtor's business can be gleaned.

8. The Debtor filed its petition without schedules. Without explanation or Court approval, the Debtor failed to include the list of 20 largest creditors as required by Interim Rule 1007, and also failed to include the statement containing a brief description of the Debtor's assets as required by LBR 1007-1(c). The Debtor's mailing list filed with the petition fails to list the United States Trustee and the state and federal taxing authorities as required by Standing Order 22 of this Court.

9. Over one month has passed since the Petition Date. The Debtor has filed none of the schedules and statements required to have been filed by July 17, 2008 under Interim Bankruptcy Rule 1007.

10. The Debtor is a limited liability company, and as such can only appear in this case through counsel. However, as of the date of this Motion, the Debtor has not sought court approval for the employment of counsel. Nor has the Debtor disclosed payments to counsel as required by Bankr. Rule 2014.

11. On July 15, 2008, the Debtor filed a document titled "List of Non-Insider Creditors Holding 20 Largest Unsecured Claims Against Debtor" (Docket No. 15). This list is grossly inaccurate, evidencing either the Debtor's inability to comply with the Bankruptcy Code or its intention to mislead creditors and this Court. In particular, the Debtor lists Frank Bell, Jr.

as holding an $800,000 "unsecured mortgage". On information and belief, Frank Bell, Jr. is an insider of the Debtor. His alleged $800,000 "unsecured mortgage" was previously characterized by the Debtor as an investment, not a loan or extension of credit. The Debtor lists the City of Hartford, Tax Collector, as an unsecured non-priority creditor for "real estate taxes" in the amount of $64,933.51 even though real estate taxes are secured claims. On information and belief, the actual amount of real estate tax liens filed against the Debtor is $148,146.30. The Debtor lists Linden as an unsecured creditor for "common charges" despite Linden's statutory lien, and despite Linden's having commenced foreclosure of the same. The Debtor lists Feldman and Hickey, LLC as having a "judgment" in the amount of $77,676.17. In fact, such claim is a judgment lien filed on the Hartford Land Records against the Debtor's real property in favor of Linden, not Feldman and Hickey, LLC (which was Linden's counsel in the underlying action).

12. Therefore, after excluding insiders and secured creditors, the Debtor has only two unsecured creditors: the Debtor's prepetition attorneys and Connecticut Light & Power.

## DESCRIPTION OF THE DEBTOR

13. The Debtor is a single purpose entity formed on April 15, 2005 to acquire the Commercial Units which contain a combined gross building area of 24,090 square feet and a net rentable area of 16,903 square feet.

14. The Debtor has no business operations and no source of revenue, other than the ownership of the Commercial Units.

15. Most of the Debtor's units are vacant. Of the non-vacant units, one is occupied by the Crumbie Law Group, pursuant to an alleged barter agreement between Crumbie and the Debtor whereby Crumbie provides legal services in lieu of lease payments. A copy of a letter

4

from Crumbie Law Group dated July 11, 2008 setting forth such arrangement is attached hereto as <u>Exhibit A</u>.

16. Emperor, LLC, an entity related to the Debtor, owns and operates a restaurant from several of the units. On information and belief, Emperor, LLC is under common control with the Debtor and pays no rent for its use of the Debtor's space.

17. Commercial Unit 10 is subject to a lease agreement dated June 12, 2006 under which RD2, LLC a/k/a Cappuccino's and More, LLC d/b/a Cappuccino's and More, is the tenant, which lease was recorded on June 28, 2006 in Volume 5660, Page 132 of the Hartford Land records.

18. Based on the information available, the Debtor has insufficient revenue to pay the costs and expenses of owning the units, including utilities, real estate taxes and common charges. (<u>See</u> Debtor's List of Non-Insider Creditors Holding 20 Largest Unsecured Claims Against Debtor (Docket No. 15)).

## **DEBTOR'S DEFAULT**

19. Pursuant to the Declaration, the Debtor is responsible for common expenses in accordance with the Debtor's percentage interest of approximately 25%. The Declaration provides for a lien in favor of Linden for all assessments levied or fines imposed against the Debtor.

20. The Debtor has failed to make the majority of payments due to Linden from February, 2007 and thereafter in the amount of $114,082.11. Such failure has caused a substantial hardship upon Linden and the residential unit owners, as the commercial units owned by the Debtor are responsible for paying approximately 25% of Linden's general operating budget. Any shortfall in the budget caused by the Debtor's failure to pay its charges and

5

assessments must be made up by all of the other unit owners. As a result of the Debtor's failure to pay common charge in the amount of $114,082.11, Linden has had to levy special assessments against the other unit owners to cover the costs of certain maintenance and capital repairs.

21. The difficulties caused by the Debtor's failure to pay common charges are acute: Linden has undertaken a major capital improvement project necessary for the continued structural integrity of the building, funded by a commercial loan in the amount of $1,500,000. Linden must repay this loan through the collection of common charge assessments from all of the unit owners. Tellingly, the Debtor, a Linden board member, actually voted in favor of the loan, even though the Debtor refuses to pay its share. Therefore, the Debtor gets the benefit of the capital improvements, but has foisted its payment obligations on the residential unit owners. The Debtor's failure to pay the common charges assessed against the Commercial Units has required Linden to levy additional assessments against the residential units to cover the shortfall.

## THE PRE-PETITION LITIGATION

22. By summons and complaint returnable to the Superior Court on August 7, 2007, Linden commenced an action to foreclose the statutory lien for unpaid common assessments (the "Foreclosure Action").

23. On October 1, 2007, the Debtor, together with Emperor, LLC, filed a Joint Answer, Special Defenses and Counterclaim, which Linden vigorously denies. The matter has been set for trial in the Superior Court on September 23, 2008 at 10:00 a.m. Linden believes that the Debtor's primary motive in filing this Chapter 11 case was to delay the trial in the Foreclosure Action. The Debtor should not be permitted to use these Chapter 11 proceedings to delay the Foreclosure Action.

6

24. In addition to the Foreclosure Action, Linden obtained a permanent injunction ("Injunction") in the Superior Court against the Debtor and Emperor, LLC (the Debtor's co-owned and co-managed restaurant), to remedy certain unlawful activities of the Debtor which denied the residents the quiet enjoyment and peaceful possession of the residential units. In addition, the injunction required the Debtor to abate and prevent activities which threaten the health and welfare of the residential unit owners; in particular, the Debtor failed to remove garbage on a regular and timely basis, resulting in odors, pests and other nuisances, and the Debtor failed to pay its electric bills. Prior to the issuance of the permanent injunction, the Superior Court issued an order of contempt against the Debtor and Emperor, LLC for their failure to comply with a temporary injunction entered in connection with the same action. In addition, on July 1, 2008, the Superior Court entered a money judgment in favor of Linden against the Debtor and Emperor for $77,676.17 for payment of Linden's attorney's fees in connection with the injunction action. These amounts are included in the statutory lien in favor of Linden. In addition, in an exercise of caution, Linden recorded a certificate of judgment lien for such amounts.

**THE DEBTOR HAS NO EQUITY IN THE COMMERCIAL UNITS**

25. Pursuant to an appraisal obtained by Linden's counsel made as of August 22, 2007, the value of the Commercial Units (treated as one economic unit) was $633,400.00. At the time of the appraisal, the property was subject to tax liens in the amount of $91,456.00 and a special assessment owed to Linden in the amount of $342,508.00 for the share of the repayment of the commercial loan attributable to the Commercial Units. Such tax liens are now $148,146.30. In addition, the property is subject to a Mechanic's Lien in favor of Midpoint Mechanical, LLC in the amount of $54,453.45, recorded on February 23, 2006 in Volume 5563,

7

Page 98. The Commercial Units are also subject to the additional judgment for attorney's fees in favor of the Linden in the amount of $77,676.17. Real estate taxes have continued to accrue. Common charges and assessments have continued to accrue.

26. Based on the foregoing, the Debtor has no equity in the Commercial Units.

### THE COMMERCIAL UNITS ARE NOT NECESSARY TO AN EFFECTIVE REORGANIZATION

27. The Debtor has no active business operations, is under-capitalized and has no source of revenue sufficient to pay its operating expenses. The Debtor is incapable of paying its on-going operating expenses and the costs and expenses of owning the Commercial Units, including taxes, utilities and common charges.

28. Based on the foregoing, the Debtor is not only incapable of reorganization, the Debtor has no business to reorganize.

### OTHER CAUSE, INCLUDING OF ADEQUATE PROTECTION, EXISTS FOR GRANTING RELIEF FROM STAY

29. As more fully described above, the Debtor's filings in this case are fatally inadequate. The Debtor has filed none of the required schedules and statements. As a result, the Debtor has made no meaningful disclosure to creditors or this court regarding the Debtor's assets, liabilities or business.

30. The Debtor, a limited liability company, has not even sought to retain counsel in this case. A limited liability company may not appear *pro se*. Therefore, the Debtor is incapable in participating in any of the proceedings in this Chapter 11 case.

31. The continued inability of Linden to obtain payment of its common charges and assessments has caused and continues to cause undue hardship on the other unit owners. As

these charges constitute a statutory lien on the units (subject only to real estate taxes) the Debtor has no business or legal justification for its failure to make payment to Linden.

32.  Real estate taxes and common charges continue to accrue as liens against the Commercial Units.  Based on current market conditions, it is reasonable to believe that the value of the Commercial Units has declined since the August 24, 2007 appraisal, and will continue to decline into the foreseeable future.  Therefore, the value of Linden's secured claim is being eroded.

WHEREFORE, Linden respectfully requests that this Court enter an Order (1) granting it relief from the automatic stay to prosecute the foreclosure action to conclusion; or, alternatively, (2) requiring the Debtor to provide adequate protection to Linden; (3) granting Linden relief from the automatic stay to enforce the Injunction; and (4) granting Linden such other and further relief as may be just and equitable under the circumstances.

Dated: August 11, 2008

                THE MOVANT,
                THE LINDEN CONDOMINIUM ASSOCIATION, INC.


By ____/s/ Scott D. Rosen_____
    Scott D. Rosen, Esq. (CT Bar No. ct01417)
    Cohn Birnbaum & Shea, P.C.
    100 Pearl Street – 12th Floor
    Hartford, CT  06103
    Telephone:  (860)493-2200
    Fax: (860) 727-0361
    srosen@cb-shea.com

143166v2 SDR 38200-001